```
                UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                      TAMPA DIVISION
```

RAFAEL ALEMAN-RIVERA,


v.                                    Case No. 8:18-cr-596-VMC-CPT
                                               8:24-cv-916-VMC-CPT

UNITED STATES OF AMERICA

_____/

**ORDER**

On April 11, 2024, Rafael Aleman-Rivera, proceeding pro se, filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence. (Civ. Doc. # 1; Crim. Doc. # 1026). The United States of America responded on May 23, 2024. (Civ. Doc. # 3). For the reasons that follow, the Motion is denied.

**I.  Background**

In September 2019, Mr. Aleman-Rivera was indicted on one count of conspiring to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C §§ 846 and 841(b)(1)(A). (Crim. Doc. # 227). On January 23, 2020, Mr. Aleman-Rivera pled guilty, without a plea agreement, to Count One of the Second Superseding Indictment. (Crim. Doc. # 462). Mr. Aleman was represented by attorney Frank Gaviria throughout the plea process. (Crim. Doc. # 318). Thereafter,

he was represented by attorneys Richard Escobar and Dino M. Michaels through sentencing. (Crim. Doc. # 511).

During the change of plea hearing, Magistrate Judge Christopher P. Tuite asked Mr. Aleman-Rivera, who was under oath, and his attorney, Mr. Gaviria, several questions regarding the guilty plea. (Crim. Doc. # 662). In response, Mr. Aleman-Rivera agreed that he had reviewed the facts and evidence with counsel; that he had discussed his options, including the possibility of taking the case to trial, with counsel; and that he was fully satisfied with the advice that he had received. (Id. at 9:14-10:4). He further assured that he was pleading guilty freely and voluntarily, and that he had not been threatened, coerced, or forced into doing so. (Id. at 9:7-13, 12:6-12).

Pursuant to the Magistrate Judge's inquiry, Mr. Aleman-Rivera acknowledged that a written plea agreement had been provided to him by the United States, that he had the opportunity to confer with counsel about it, and that he elected not to sign it. (Id. at 10:5-11:13). Mr. Aleman-Rivera confirmed that he was satisfied with his decision to enter a plea of guilty in this case without a written plea agreement. (Id. at 11:14-17).

Next, the Magistrate Judge reviewed with Mr. Aleman-Rivera the penalties he would be subject to, the elements of the charged offense, and the factual basis of his guilty plea. (Id. at 13:7-24:15). Mr. Aleman-Rivera confirmed that he understood all possible punishment, including a minimum term of imprisonment of ten years and maximum of life imprisonment. (Id. at 13:7-14:18). He also understood that if his case had gone to trial, the United States would have needed to prove all the essential elements discussed, including whether the amount of cocaine in the conspiracy was at least five kilograms. (Id. at 20:1-11).

Prior to reading the factual basis in support of the guilty plea, Mr. Aleman-Rivera's counsel requested that he be allowed to stipulate that his participation in the conspiracy resulted in the distribution of five kilograms or more of cocaine. (Id. at 20:12–21:16). The following factual basis was then read onto the record:

> In support of the essential elements of the crime charged and being pled to in this case, the United States would have been prepared at trial to present at a minimum these facts: That in 2018, as part of an unlawful agreement to possess with intent to distribute cocaine, multi kilograms of high purity cocaine were shipped into the Middle District of Florida and elsewhere via the United States Postal Service from various locations in Puerto Rico. The defendant, knowing the unlawful purpose of the plan, willfully joined in it. The

3

> defendant's participation in the conspiracy
> resulted in the distribution of more than 5
> kilograms of cocaine.
>
> From co-conspirators the defendant secured
> addresses and participated in the mailing of
> packages [that] contained kilogram quantities of
> cocaine to these various residential addresses in
> the Middle District of Florida and elsewhere.
> Several packages were seized and searched by law
> enforcement in the Middle District of Florida and
> found to contain kilogram quantities of cocaine,
> resulting in the seizure of five or more kilograms
> of cocaine.
>
> The defendant also participated in the
> collection and movement of proceeds from the sale
> of cocaine. On or about August 15th, 2018, the
> defendant mailed a package containing $23,000 in
> drug proceeds which was seized by law enforcement.

(Id. at 23:1-25). Mr. Aleman-Rivera agreed to those facts

under oath. (Id. at 24:10-15).

When asked if he had any questions in connection with

his guilty plea, Mr. Aleman-Rivera responded, "No, I'm fine

with everything of the case, Your Honor." (Id. at 25:16-23).

Having determined that a factual basis supported the guilty

plea, the Magistrate Judge found Mr. Aleman-Rivera's plea to

be knowing and voluntary. (Id. at 25:25-26:15). Accordingly,

the Magistrate Judge entered his Report and Recommendation,

recommending that the plea of guilty be accepted. (Crim. Doc.

# 467). Neither party filed any objections, and the Court

accepted the guilty plea. (Crim. Doc. # 505).

4

In advance of sentencing, the United States Probation Office prepared a Presentence Report ("PSR"). (Crim. Doc. # 777). The PSR estimated that Mr. Aleman Rivera "shipped in excess of 1,000 kilograms of cocaine," and scored his offense level as follows: his base offense level was 38; a four-level enhancement was added for his role leading the conspiracy; and a three-level reduction was deducted for acceptance of responsibility. (Id. at 6, 9). Based upon a total offense level of 39 and a criminal history category of I, the PSR recommended a guidelines imprisonment range of 262 months to 327 months. (Id. at 13). Mr. Aleman-Rivera's attorney, Mr. Michaels, filed objections to the PSR's drug quantity estimate and role enhancement. (Id. at 16-21). Counsel also filed a sentencing memorandum, maintaining his objections to the PSR and moving for a downward variance due to Mr. Aleman-Rivera's personal characteristics and history. (Doc. # 914).

On January 18, 2022, Mr. Aleman-Rivera's sentencing hearing was held before United States District Judge James D. Whittemore. (Crim. Doc. # 916). At sentencing, the United States presented co-conspirator Jorge Colon as a witness to address Mr. Aleman-Rivera's objections to the PSR. (Doc. # 997 at 5:15-56:23). Mr. Colon testified about Mr. Aleman-Rivera's leadership role in the conspiracy and the amount of

cocaine attributable to the conspiracy. (Id. at 5:15–16:14). However, Mr. Aleman-Rivera's attorneys, Mr. Escobar and Mr. Michaels, challenged Mr. Colon's credibility and argued that his testimony was not enough to establish that the conspiracy distributed 1,000 kilograms of cocaine or to support the role enhancement. (Id. at 60:10–67:23, 80:19–82:2).

Crediting Mr. Colon's testimony, the Court first found that "a reasonable estimate of the number of kilos involved in this distribution conspiracy was at least 150 kilograms but less than 450." (Id. at 76:20-23). Next, the Court found that Mr. Colon's testimony was credible and reliable enough to support the role enhancement. (Id. at 82:4-83:18). Accordingly, the Court sustained Mr. Aleman-Rivera's objection to the drug quantity – to the extent that it challenged the PSR's estimate of 1,000 kilograms of cocaine – and overruled his objection to the role enhancement. (Id. at 76:20-79:13, 82:4-83:18). While his resulting total offense level was 37, carrying a guideline imprisonment range of 210 months to 262 months, the Court varied downward and sentenced Mr. Aleman-Rivera to 180 months' imprisonment. (Id. at 93:6-20; Doc. # 917).

Mr. Aleman-Rivera filed his notice of appeal on January 31, 2022. (Doc. # 923). The Eleventh Circuit affirmed Mr.

Aleman-Rivera's sentence, rejecting his argument that it was procedurally unreasonable. (Doc. # 1005 at 4).

Mr. Aleman-Rivera seeks to vacate his conviction and sentence, raising claims of ineffective assistance of counsel. (Civ. Doc. # 1; Crim. Doc. # 1026). The United States responded in opposition. (Civ. Doc. # 3). Mr. Aleman-Rivera filed a corrected memorandum in support of his 2255 Motion (Civ. Doc. # 5), as well as an addendum to his 2255 Motion. (Civ. Doc. # 6). The Court treats Mr. Aleman-Rivera's addendum as a reply. The Motion is ripe for review.

## II.  **Legal Standard**

Mr. Aleman-Rivera bears the burden of proving that he is entitled to relief under Section 2255. See LeCroy v. United States, 739 F.3d 1297, 1321 (11th Cir. 2014) ("[O]n a § 2255 petition, [the burden of proof] belongs to the petitioner."). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).

To establish deficient performance under the first prong, Mr. Aleman-Rivera must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel were outside the wide range of

7

professionally competent assistance." <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (internal citations and quotations omitted). In other words, Mr. Aleman-Rivera must show that "no competent counsel would have taken the action that [his] counsel did take." <u>Id.</u> at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 1314 (internal quotation marks omitted).

To satisfy <u>Strickland</u>'s second prong — prejudice — Mr. Aleman-Rivera must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> "To establish prejudice in the context of a guilty plea, [Mr. Aleman-Rivera] must show that there is a 'reasonable probability that, but for counsel's unprofessional errors,' he would not have entered a guilty plea and would have insisted on going to trial." <u>Solomon v. United States</u>, No. 1:10-cr-376-RWS-CCH, 2012 WL 1900138, at

8

*2 (N.D. Ga. May 2, 2012) (citation omitted), <u>report and recommendation adopted</u>, No. 1:10-cr-0376-RWS-CCH, 2012 WL 1900136 (N.D. Ga. May 24, 2012). "[I]f a claim fails to satisfy the prejudice component, the Court need not make a ruling on the performance component." <u>Ortiz v. United States</u>, No 8:15-cr-409-VMC-JSS, 2017 WL 6021645, at *2 (M.D. Fla. Jan. 11, 2017).

"[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1060 (11th Cir. 2002) (citation omitted). "The decision whether to present a line of defense, or even to investigate it, is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable." <u>Id.</u> (internal quotation and citation omitted); <u>see also Stephens v. United States</u>, 14 F. Supp. 2d 1322, 1331 (N.D. Ga. 1998) ("A decision not to investigate a potential defense, like other litigation decisions, need only be reasonable to fall within the range of professionally competent assistance." (citation omitted)).

Additionally, "[i]n cases where the files and records make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984).

## III. **Discussion**

Mr. Aleman-Rivera raises two ineffective assistance of counsel claims. (Civ. Doc. ## 1, 5). First, he claims that his plea counsel, Mr. Gaviria, was ineffective for failing to (1) explain the consequences of pleading guilty versus going to trial, (2) conduct an adequate and independent pretrial investigation, and (3) attempt to negotiate a favorable plea agreement (Ground One). (Civ. Doc. # 5 at 6-13). Second, he claims that his sentencing counsel, Mr. Escobar and Mr. Michaels, failed to (1) correctly discuss and explain the PSR with him, (2) file substantive objections to the PSR, and (3) argue for mitigation of punishment and object to his allegedly substantively unreasonable sentence (Ground Two). (Id. at 13-27).

To the extent that Mr. Aleman-Rivera's construed reply raises a third ineffective assistance of counsel claim against his appellate counsel (Civ. Doc. # 6), the Court does not consider this argument. Mr. Aleman-Rivera waived this

10

claim by failing to include it in his 2255 Motion and raising it for the first time in his reply. See Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018) ("Oliveiri did not present this claim in his § 2255 motion, but rather raised it for the first time in his reply to the government's response. By doing so, he waived the claim.").

And even if the Court were to construe his reply, filed on June 14, 2024, as a motion for leave to amend, amendment would have been futile. The ineffective assistance claim against his appellate counsel neither relates back to the claims raised regarding his plea and sentencing counsel in the 2255 Motion nor was it timely filed within the one-year period. Id. at 967-68 ("Moreover, even assuming the district court should have construed Oliveiri's reply as a request for leave to amend his § 2255 motion to add a claim regarding the § 2B1.1(b)(11)(C)(i) enhancement, granting leave to amend would have been futile because the new claim was untimely and did not 'relate back' to the two claims that he initially (and timely) presented in his § 2255 motion.").

However, the first two claims, Grounds One and Two, have been timely raised and are cognizable. (Civ. Doc. # 3 at 7). Moving to the merits, the Court addresses each Ground in turn.

A. <u>**Ground One**</u>

In his 2255 Motion, Mr. Aleman-Rivera advances three arguments about plea counsel Mr. Gaviria's performance regarding the guilty plea.

i. <u>**Failure to Explain Consequences of Pleading Guilty**</u>

Mr. Aleman-Rivera first argues that plea counsel was ineffective for failing to "communicate with [him] and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial." (Civ. Doc. # 5 at 6). The Court construes this argument as a challenge to his guilty plea.

The Supreme Court has held that "the two-part <u>Strickland</u> [] test applies to challenges to guilty pleas based on ineffective assistance of counsel," and that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985). "There is a strong presumption that statements made during the plea colloquy are true. Consequently, a defendant bears a heavy burden to show that his statements under oath were false." <u>Patel v. United States</u>, 252 F. App'x 970, 975 (11th Cir. 2007) (citations omitted).

12

Here, Mr. Aleman-Rivera made numerous statements under oath at his change of plea hearing that refute that his plea was involuntary. The Court fully explained the elements of the offense, maximum penalties, and factual basis supporting the guilty plea to Mr. Aleman-Rivera, who agreed to the facts and stated that he understood the penalties. (Doc. # 662 at 13:7-24:15). Importantly, Mr. Aleman-Rivera was advised of his right to proceed to trial, and he acknowledged that counsel discussed with him the option of going to trial. (Id. at 9:14-25). Moreover, he confirmed multiple times that he was satisfied with his decision to plead guilty, and that he had not been forced, threatened, or coerced. (Id. at 8:23-9:13, 11:11-17, 12:6-17).

Mr. Aleman-Rivera has not satisfied the heavy burden of showing that his statements made under oath during his plea colloquy were false. See Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) ("[B]ecause Winthrop-Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)). He fails to rebut his own sworn statements that he discussed his case with counsel, was satisfied with his representation and decision to plead guilty, and understood his possible sentence and the consequences of pleading

13

guilty. The Court does not credit Mr. Aleman-Rivera's conclusory allegations that he was persuaded into pleading guilty, and that his counsel failed to properly advise that he could proceed to trial and what his prospects of success or likely sentence would be. (Civ. Doc. # 5 at 7-8). Thus, Mr. Aleman-Rivera's plea was knowing and voluntary.

Regardless, Mr. Aleman-Rivera has not established that he was prejudiced, as he fails to show that he would have insisted on going to trial. The Motion claims only that "he was prejudiced by receiving a 180-month sentence," and that "there is a reasonable probability that [he] would have proceeded to trial or benefi[ted from] a significantly less harsh sentence." (Id. at 9, 12). These general assertions are insufficient. See Reed v. United States, 792 F. App'x 676, 678 (11th Cir. 2019) (per curiam) ("Finally, Reed has failed to allege any facts, other than general assertions, showing that he would have proceeded to trial had he not been misled."); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that conclusory statements, unsupported by specific facts or the record, are insufficient to demonstrate entitlement to habeas relief). Additionally, given Mr. Aleman-Rivera's complaint that counsel failed to negotiate a more favorable plea agreement and the strength of

14

the evidence against him, the Court doubts that Mr. Aleman-Rivera would have proceeded to trial. Therefore, it is not reasonably probable that Mr. Aleman-Rivera would have chosen to go to trial absent his counsel's alleged errors. The Motion is denied as to this sub-ground.

ii. **Failure to Conduct Adequate Pretrial Investigation**

Next, Mr. Aleman-Rivera faults plea counsel for failing to conduct an adequate and independent investigation. Specifically, he alleges that his counsel "failed to research the case law, interview witnesses or investigate the facts of [Mr.] Aleman-Rivera's case" or "put the government's case to any kind of adversarial test." (Civ. Doc. # 5 at 8-9).

Importantly, Mr. Aleman-Rivera provides no specific information or facts as to what counsel's investigation could have produced. See Hardamon v. United States, 319 F.3d 943, 951 (7th Cir. 2003) ("[A] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, 'a comprehensive showing as to what the investigation would have produced.'" (citation and quotation omitted)). He includes only general allegations in support of his claim. Therefore, Mr. Aleman-Rivera has failed to establish "particular and identified

15

acts or omissions of counsel" that were unreasonable and deficient. Chandler, 218 F.3d at 1314; see also United States v. Godwin, 910 F. Supp. 596, 600 (M.D. Fla. 1995) ("Petitioner contends that counsel made no attempt to investigate potential witnesses of whom the Petitioner informed him. However, Petitioner has not identified specific omissions of counsel that are alleged not to have been the result of reasonable professional judgment.").

In any event, Mr. Aleman-Rivera's lack of specificity is also fatal to the prejudice prong. Again, the Court finds his general and unsupported allegation – that if his counsel had conducted an adequate investigation, "there is a reasonable probability that [he] would have proceeded to trial or benefi[ted from] a significantly less harsh sentence" (Civ. Doc. # 5 at 9) – insufficient. Having failed to establish both deficient performance and prejudice, Mr. Aleman-Rivera's argument fails. Strickland, 466 U.S. at 687.

### iii. Failure to Negotiate a Favorable Plea Agreement

Mr. Aleman-Rivera last asserts that plea counsel did not attempt to negotiate a favorable plea agreement. As with his other claims, Mr. Aleman-Rivera's Motion fails to allege facts or information supporting this claim. The record establishes that the United States offered Mr. Aleman-Rivera

16

a plea agreement, which he discussed with counsel and decided not to sign. (Civ. Doc. # 662 at 10:5-11:13). And Mr. Aleman-Rivera expressed satisfaction as to the representation and advice he received from counsel, and his decision to plead guilty without a written plea agreement. (Id. at 10:1-4, 11:14-17).

As the United States argues, "[t]here is no indication in the record that counsel could have secured an even more favorable plea agreement, and [Mr.] Aleman-Rivera fails to show a reasonable probability that, had counsel acted differently, the United States would have made a more favorable plea offer." (Civ. Doc. # 3 at 13). Based on the record, Mr. Aleman-Rivera fails to establish either deficient performance or resulting prejudice. Strickland, 466 U.S. at 687; see also Guyadeen v. United States, No. 3:01-cr-160-TJC-MCR, 2006 WL 1360894, at *3 (M.D. Fla. May 17, 2006) ("Here, Guyadeen offers no suggestion as to how his counsel should have performed during plea agreement negotiations. . . . Further, even assuming Guyadeen's counsel should have proffered that substitute conditions be included in the plea agreement, there is no evidence that the government would have acquiesced. Thus, Guyadeen has neither shown his

17

counsel's performance to be inadequate nor any resulting prejudice.").

Here, Mr. Aleman-Rivera also notes that after "read[ing] law books . . . he came to realize that he should have proceeded to trial instead of signing an open plea offer." (Civ. Doc. # 5 at 11). However, a "section 2255 motion is not designed to account for buyer's remorse regarding a defendant's decision to plead guilty." Dawson v. United States, No. 8:16-cr-500-VMC-AEP, 2019 WL 11704149, at *6 (M.D. Fla. Apr. 15, 2019).

Accordingly, the Motion is denied as to Ground One.

**B. Ground Two**

Mr. Aleman-Rivera next asserts that sentencing counsel, Mr. Escobar and Mr. Michaels, were ineffective for three reasons. Specifically, he faults sentencing counsel for failing to correctly discuss and explain the PSR to him, file substantive objections to the PSR, and argue for mitigation of punishment or object to his sentence as substantively unreasonable. (Civ. Doc. # 5 at 13-27). These arguments are refuted by the record.

First, the record establishes that Mr. Aleman-Rivera's counsel met with him to discuss the PSR. Probation's PSR included an e-mail exchange with Mr. Aleman-Rivera's counsel,

in which counsel explained the need to meet with his client to discuss the PSR before fully articulating all objections to the PSR. (Crim. Doc. # 777 at 22). Once counsel provided the objections to Probation weeks later, he noted that he had met with Mr. Aleman-Rivera. (Id. at 19-21).

Second, Mr. Aleman-Rivera asserts that counsel failed to challenge the guideline calculations contained in the PSR. (Civ. Doc. # 5 at 25-26). Counsel, however, filed six written objections to the PSR. (Doc. # 777 at 19–20). Contrary to Mr. Aleman-Rivera's assertion, counsel objected to the drug quantity, arguing that there was insufficient evidence to hold Mr. Aleman-Rivera accountable for 1,000 kilograms of cocaine. (Id.). Counsel further objected to the four-level role enhancement – claiming that Mr. Aleman-Rivera was not a leader of the conspiracy – and, in turn, the calculation errors that resulted from the adjusted offense level. (Id. at 20-21). Thus, counsel actively and competently challenged the portions of the PSR that increased Mr. Aleman-Rivera's guidelines range.

Mr. Aleman-Rivera also appears to argue here that the presentation of Mr. Colon's testimony at the sentencing

hearing was prosecutorial misconduct.[1] (Civ. Doc. # 5 at 17-
25). However, he does not explain how that constitutes
ineffective assistance by his sentencing counsel. Indeed, Mr.
Aleman-Rivera acknowledges that his counsel "attacked the
credibility of the witness successfully." (Id. at 24). The
transcript shows that counsel objected to Mr. Colon's
credibility during the sentencing and urged the Court not to
consider that testimony in determining the drug quantity.

---

[1] The Court does not construe Mr. Aleman-Rivera's mention of
the prosecutor's calling Mr. Colon as a witness as a
freestanding claim of prosecutorial misconduct. Even if the
Court did so, this claim would be denied. Mr. Aleman-Rivera's
pointing out alleged inconsistencies between Mr. Colon's
testimony at his sentencing and other hearings falls far short
of establishing that the prosecutor knowingly presented
perjured testimony to the Court as necessary to support a
claim under Giglio v. United States, 405 U.S. 150 (1972). See
Serrano v. Sec'y, Dep't of Corr., No. 8:15-cv-945-CEH-CPT,
2018 WL 3621045, at *10 (M.D. Fla. July 30, 2018) ("Serrano's
Giglio claim must fail because he has not alleged any facts
to show that Detective Vance's testimony was false. Rather,
his claim is based on speculation arising out of his belief
that Detective Vance has a personal 'vendetta' against him.
Further, even if her testimony was false, Serrano alleges no
facts showing that the prosecutor knew the testimony to be
false."). Furthermore, any prosecutorial misconduct argument
could have been raised by Mr. Aleman-Rivera on direct appeal
such that this claim would likely be procedurally defaulted.
See Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir.
2004) ("Under the procedural default rule, a defendant
generally must advance an available challenge to a criminal
conviction or sentence on direct appeal or else the defendant
is barred from presenting that claim in a § 2255
proceeding."); Wilkins v. United States, 682 F. Supp. 3d 1137,
1158 (S.D. Fla. 2023) (dismissing Giglio claim as
procedurally defaulted).

(Crim. Doc. # 997 at 73:13-75:2). The Court's determination that Mr. Colon was — at least to a degree — credible does not render counsel's cross-examination of or argument regarding Mr. Colon ineffective.

Finally, contrary to Mr. Aleman-Rivera's assertion, counsel effectively argued for mitigation of his sentence. In addition to the objections to the PSR, counsel successfully advocated for a downward variance in the sentencing memorandum and at the sentencing hearing. (Crim. Doc. # 914; Crim Doc. # 997 at 87:25-90:8). Mr. Aleman-Rivera also fails to show that his sentence was substantively unreasonable. Indeed, the 30-month downward variance from the guidelines range that he received undermines his claim. See United States v. McQueen, 727 F.3d 1144, 1156 (11th Cir. 2013) ("[I]t is only the rare sentence that will be substantively unreasonable."); United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) ("Although we do not automatically presume a sentence within the guidelines range is reasonable, we 'ordinarily . . . expect a sentence within the Guidelines range to be reasonable.'" (citation omitted)). Thus, sentencing counsel was not ineffective for failing to make the substantive unreasonable argument before the Court. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel

cannot be labeled ineffective for failing to raise issues which have no merit.").

Even if counsel failed to sufficiently discuss the PSR with him, to sufficiently object to the PSR, or to sufficiently argue for mitigation or a lower sentence, Mr. Aleman-Rivera fails to show that he was prejudiced by such failure. Mr. Aleman-Rivera does not identify any argument that his sentencing counsel could have made that would have had a reasonable likelihood of resulting in a lower sentence.

Again, Mr. Aleman-Rivera fails to demonstrate deficient performance and prejudice as to each argument. Strickland, 466 U.S. at 687. The Motion is denied as to Ground Two.

## IV.  **Evidentiary Hearing**

As the Court readily determined that Mr. Aleman-Rivera is not entitled to relief, no evidentiary hearing is required. See 28 U.S.C. § 2255(b) (stating that an evidentiary hearing is not necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); see also Hernandez, 778 F.3d at 1232-33) ("To establish that he is entitled to an evidentiary hearing, Hernandez had to allege facts that would prove that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance.").

22

**V.    Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied**

The Court declines to issue a certificate of appealability because Mr. Aleman-Rivera has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Mr. Aleman-Rivera to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Mr. Aleman-Rivera shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Rafael Aleman-Rivera's pro se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 1026) is **DENIED.**

(2)   The Clerk is directed to enter judgment in favor of the United States of America and against Mr. Aleman-Rivera and, thereafter, to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

<u>16th</u> day of June, 2024.

_____

VIRGINIA M. HERNANDEZ COVINGTON

UNITED STATES DISTRICT JUDGE

24